**Ray WOOD, Plaintiff,**

v.

**The TOWN OF FREDERICA and George H. Nashold, in his individual and official capacity, Defendants.**

**Civ. A. No. 79–188.**

United States District Court,
D. Delaware.

Jan. 5, 1982.

John S. Grady, Dover, Del., for plaintiff.

Henry duPont Ridgely, Ridgely & Ridgely, P.A., Dover, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiff Ray Wood brought an action for damages and declaratory and injunctive relief under 42 U.S.C. § 1983, alleging that he lost his job as Chief of Police of Frederica, Delaware, through unconstitutional action by Frederica's former mayor, George H. Nashold ("Mayor" or "Nashold"). Wood originally alleged that Nashold and the Town Council of Frederica decided not to renew his contract on the basis of considerations impermissible under the First Amendment to the United States Constitution. On February 24, 1980, this Court entered summary judgment in favor of the defendant Town of Frederica but denied it as to defendant Nashold. *Wood v. Town of Frederica*, No. 79–188 (D.Del.Feb. 24, 1980). Presently before the Court is defendant's motion to dismiss as to Nashold. Because the parties have relied on matters outside the pleadings in support of this motion, defendant's motion to dismiss for failure to state a claim under F.R.C.P. 12(b), (c) will be treated as a motion for summary judgment. *See Sprague v. Fitzpatrick*, 546 F.2d 560, 563 (3d Cir. 1976), *cert. denied*, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 (1969). For the reasons stated below the motion for summary judgment will be granted.

### The Facts

In its memorandum opinion of February 24, 1980, the Court recited uncontroverted findings of fact which will be summarized.

In September, 1977, while employed as Chief of Police of Frederica, Wood wrote a letter to the State Judiciary Committee lodging a charge against a magistrate, Wallace Wooten, based on a perceived conflict of interest between Wooten's role as Justice of the Peace and his insurance work. The extent of the Mayor's acquiescence in this letter is disputed. The parties also dispute whether Wood wrote the letter in his official capacity or as a private citizen. It is not disputed that both the Mayor and the Town Council knew of Wood's action. The letter soon became a source of controversy. On January 11, 1978, Wood reported to the Town Council that Magistrate Wooten was to be represented at the conflict of interest proceeding by a partner in the firm of the Town's attorney, Nicholas Rodriguez. Three weeks later, at the Town Council meeting of February 2, 1978, Rodriguez explained that because Nashold had told him that the Town was not involved in the charges against Wooten, his firm would experience no conflict in representing him. Other members of the Town Council apparently disagreed, choosing instead to back Wood by assuming responsibility for his action and voting to finance litigation expenses associated with his complaint, contrary to the advice of Rodriguez and Nashold. In a letter to the Mayor dated February 9, 1971, Rodriguez expressed a fear that by voting to financially back Wood's suit the Town and individual members of the Council had opened themselves to a potential defamation action, and further announced that due to appearances created by this misunderstanding over the nature of the suit, his firm would withdraw as counsel for Wooten to avoid any appearance of impropriety.

Election campaigns for a new Town Council took place in February. Nashold claims that Wood campaigned against him and made public statements regarding his unwillingness to work with Nashold in the future. The Council elected in March proved favorable to Nashold. At the reorganizational meeting on March 9, 1978, this new Council reelected Nashold as Mayor, and did not renew Wood's contract as Chief of Police. This failure to renew Wood's contract is the basis of his claim.

The question presented is whether Wood's claim states a cause of action under current First Amendment jurisprudence. Wood's theory has never been articulated with the degree of clarity one would prefer. He apparently alleges that he lost his job as Chief of Police because of speech protected by the First Amendment—the letter regarding Magistrate Wooten. He further seems to assert that whether or not this letter caused a deterioration in his relationship with Mayor Nashold, such deterioration does not alter the fact that his constitutional right to freedom of speech has been violated. Defendant counters that even if the cause of Wood's firing was not the letter, but rather the fear of a libel suit if Nashold did not dissociate himself from Wood's actions, the disruptive impact of this letter on Wood's working relationship with Nashold justified Nashold's action. The Court agrees with the defendant that the disruptive impact of Wood's protected speech precludes his recovery here.

The Court of Appeals for the Third Circuit recently outlined a three-step analysis for claims of retaliatory action against public employees for protected speech in *Trotman v. Board of Trustees of Lincoln University*, 635 F.2d 216 (3d Cir. 1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981). First, plaintiff must show that he engaged in protected activity. Second, plaintiff must show that the activity was a substantial or motivating factor in an action taken against him. Third, defendant may defeat plaintiff's claim by demonstrating that the same action would have been taken against plaintiff even in the absence of the protected conduct. Therefore, the plaintiff can prevail only if the court finds that but for the protected activity, the employee would not have been removed. *Id.* at 224–25.

The parties agree that the letter written by Wood was protected under the First Amendment. The parties disagree, however, on the second point: whether Wood's letter was a "substantial or motivating fac-

tor" in his firing, a test first enunciated in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Plaintiff argues that the letter itself set off a chain of events which ultimately led to his firing. Defendant asserts instead that the dispute between the parties was over the capacity in which Wood wrote the letter—that is, whether he wrote it in his official capacity or as a private action.

The Court need not decide this issue. Even assuming that Wood could show successfully that the letter itself was a substantial or motivating factor in Nashold's decision to fire him, his claim would still be defeated under the third element of *Trotman*, because the same action would have been taken against Wood even in the absence of his protected conduct. A public employee's First Amendment rights are not absolute. The appellate court noted in *Trotman* that "the public employee cannot engage in activity that impairs the efficiency of such public service." 635 F.2d at 229. The Supreme Court explained in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), that a balance must be struck between the interests of public employees in commenting on matters of public concern and the interest of the state in promoting the efficiency of public service. *Id.* at 568, 88 S.Ct. at 1734. Although in *Pickering* the Court reversed the firing of a teacher who had written a letter to the local newspapers critical of the school board, the Court indicated that the balance of competing interests might be different in "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." *Id.* at 570, 88 S.Ct. at 1735; *see id.* at 570 n.3, 88 S.Ct. at 1735 n.3. Under the analysis of *Trotman* and *Pickering*, Wood's claim must fail. Not only did his

activity impair his public service by rendering further working with the mayor impossible, but the relationship between mayor and police chief in a small town is such that it requires personal loyalty and confidence. The record reflects not only that Wood and Nashold had this type of relationship prior to the Wooten letter, but also that it had totally disintegrated by the time his contract was not renewed.

The Third Circuit Court of Appeals has in the past upheld dismissals of public employees for actions like the one challenged here which undermined close working relationships. In *Roseman v. Indiana University of Pennsylvania*, 520 F.2d 1364 (3d Cir. 1975), *cert. denied*, 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 329 (1976), the appellate tribunal upheld the dismissal of an associate professor who alleged that she was fired because of her statements at a faculty meeting regarding a controversy over the chairmanship of her department. The court noted that her communications at the meeting had an effect of interfering with harmonious relationships within her department. *Id.* at 1368.[1] Similarly, in *Sprague v. Fitzpatrick*, 546 F.2d 560 (3d Cir. 1976), *cert. denied*, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977), the Third Circuit upheld the discharge of an assistant district attorney who had alleged publicly that the district attorney had not told the truth about certain matters. The court there noted that the plaintiff's statements totally precluded any further working relationship with the district attorney because of an "irreparable breach of confidence between the two men." *Id.* at 565. It further explained that the public uproar resulting from these accusations exacerbated the disruption of public service and weighed against the employee in the *Pickering* balance. *Id.* at 565–66.

---

1. It should be noted that the test used by the district court in *Roseman*, "potentially disruptive impact," was disapproved in *Trotman*. *See* 635 F.2d at 230. The *Trotman* court explained that the proper standard is "material and substantive interference." *Id.* The *Trotman* court also noted that the primary holding

of *Roseman* that plaintiff's speech was not protected because it was made in private was overruled by the Supreme Court four years later. *Id.* at 230 n.10; *see Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

Recently, a district court has used this same analysis to dismiss a suit brought by a police chief against the mayor who allegedly fired him for testifying against him in a criminal trial. In *Hoopes v. Nacrelli*, 512 F.Supp. 363 (E.D.Pa.1981), the court granted summary judgment in favor of the mayor because "the relationship between Hoopes and Nacrelli was sufficiently close and confidential in nature that it could not continue to function unless there was some modicum of trust between the parties." *Id.* at 367; *see Hoopes v. City of Chester*, 473 F.Supp. 1214 (E.D.Pa.1979) (dismissing suit against town).

The principles underlying these cases clearly apply to the case at hand. Nashold had direct authority over Wood under the Town Charter, which grants the mayor both supervisory authority over the police and the right to dismiss any town employee.[2] Wood has stated that prior to this series of events, he met with the mayor on a daily basis for instructions or discussion of events in the town.[3] The relationship between the two men appears to be the "kind of close working relationship for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." *Pickering v. Board of Education, supra*, at 570.

This relationship completely deteriorated after the February 2, 1978 meeting. Wood himself stated that "The Mayor after that point, in referring to the communications gap, didn't communicate with me and didn't relay any complaint or anything and in view of what had happened I thought it would be very difficult to work with the Mayor."[4] Thus there is no dispute between the parties that the relationship between Wood and Nashold had reached a point at which neither man spoke to the other except briefly and then strictly on business.[5] This deterioration in the working relationship is comparable to that present in *Roseman, Sprague*, and *Hoopes, supra*.

Plaintiff argues that these cases can be distinguished because in those cases the protected speech was critical of the immediate supervisor, whereas in this case the challenged letter was directed toward a third party and in no way criticized Nashold. This distinction is legally insignificant. Speech does not acquire a less protected status under the First Amendment solely because it is critical. *See Trotman v. Board of Trustees of Lincoln University*, 635 F.2d at 225–26. The content of the challenged speech becomes relevant in the *Pickering* balance only in determining the extent of the material and substantive interference of the statement on working relationships. *See Pickering v. Board of Education, supra*, at 570–73. Here, the disruption in the relationship is unchallenged.

Plaintiff also apparently argues that because Nashold rather than Wood caused the break in communication between the two men by his unreasonable response to Wood's letter, the deterioration in the relationship cannot bar Wood's cause of action. Even assuming that the breach was Nashold's fault, the cases indicate that it is the fact of deterioration which is the determinative element, not the party who caused it. Defendant need not prove himself blameless in the dispute; he merely must show under *Mt. Healthy* that he "would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." *Mt. Healthy City School District Board of Education v. Doyle, supra*, 429 U.S. at 287, 97 S.Ct. at 576. Defendant has successfully made such a showing. Even without the letter regarding Magistrate Wooten, Wood would not have been renewed as police chief under the circumstances outlined here. Although Wood's

---

2. *See* Town Charter of Frederica, attached to Response of Defendants to Request for Production of Documents, Doc. No. 8.

3. Deposition of Ray Wood, Doc. No. 19, at 56.

4. Deposition of Ray Wood, Doc. No. 19, at 56; *see* Affidavit of Ray Wood, Doc. No. 44.

5. Deposition of Ray Wood, Doc. No. 19, at 46. Wood also acknowledged that he may have made statements about Nashold during the election campaign, including stating that he would have difficulty working with Nashold were he reelected Mayor. *Id.* at 40–41, 57.

letter may have precipitated a long chain of events which ultimately led to his dismissal, the record indicates that the previously close working relationship between Wood and Nashold had been seriously damaged by the controversy which followed, to the point where the men were not on speaking terms and Wood made public statements about his inability to work with Nashold. The fact that this deterioration occurred is itself sufficient to support Wood's dismissal.

An order will be entered granting summary judgment in favor of defendant George Nashold.