Thomas J. **BOWERS**, Plaintiff,

v.

**TOWN OF SMITHSBURG, MARYLAND,**
Defendant.

No. Civ. L–97–3304.

United States District Court,
D. Maryland.

Dec. 9, 1997.

---

**4.** The *Miranda* Court was concerned with the possibility of a suspect being isolated in a room and "surrounded by **antagonistic forces**," *Miranda,* 384 U.S. at 461, 86 S.Ct. at 1620 (emphasis added), such as law enforcement officials, conducting "**persisten[t and] relentless questioning**." *Id.* at 455, 86 S.Ct. at 1617 (emphasis added); see *Government of the Virgin Island v. Roberts,* 19 V.I. 196, 205 (D.V.I.1982) ("[T]he key aspect of the custodial setting, *as described in Miranda* is the isolation of the suspect in a room that is dominated by the law enforcement officials who will interrogate him."). The element of antagonistic law enforcement officers is absent from this case. It was Christopher who wanted to "rap with Johnny," because he was both familiar and comfortable with Officer Meyers.

Lewis C. Metzner, Hagerstown, MD, Paul B. Weiss, Martin & Seibert, L.C., Martinsburg, WV, for Plaintiff.

Daniel Karp, Baltimore, MD, Edward L. Kuczynski, Hagerstown, MD, for Defendant.

*MEMORANDUM*

LEGG, District Judge.

Plaintiff Bowers was the appointed Chief of Police of the Town of Smithsburg, Maryland. The Smithsburg Town Charter states that department heads, such as the Chief of Police, serve at the pleasure of the Mayor.

In the summer of 1997, the Mayor of Smithsburg decided to fire Chief Bowers and sought the informal concurrence of the Town Council. On August 5, 1997, the Town Council met in closed executive session and, without providing Chief Bowers prior notice or a hearing, concurred in the Mayor's decision. The Mayor terminated Chief Bowers's employment shortly thereafter.

Chief Bowers filed suit for reinstatement and damages pursuant to 42 U.S.C. § 1983. His suit contends that Annotated Code of Maryland Article 23A, Section 2(b)(25) (1996) ("Section 2(b)(25)"), provides him with a Constitutionally-protected property interest in his job. Section 2(b)(25) authorizes a city council to remove an appointed municipal

official from office, but also requires the city council to provide prior notice and a hearing. Chief Bowers argues that his removal from office, without prior notice and a hearing, violated his procedural due process rights under the Fourteenth Amendment.

Chief Bowers moved for preliminary injunctive relief, and the Town of Smithsburg moved to dismiss. At a hearing on the motions, the Court was called upon to decide: (i) whether Section 2(b)(25) provides the exclusive means under Maryland law for the removal of an appointed municipal official, in which case the power of termination resides in a city council and the city council must provide notice and a hearing; or (ii) whether Section 2(b)(25) is non-exclusive and does not supplant the Mayor's traditional prerogative summarily to remove appointees who serve at the Mayor's pleasure.

For the reasons stated below, the Court shall, by separate Order: (i) treat the Motion to Dismiss as a motion for summary judgment; (ii) GRANT the motion; and (iii) ENTER JUDGMENT for the Town of Smithsburg.

**I. Summary Judgment Standard**

A Court shall grant summary judgment when "there is no genuine issue as to any material fact [and] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (1997). If a plaintiff "fail[s] to make sufficient showing on an essential element of her case with respect to which she has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 & 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In this case, as the Court noted at the hearing, no material facts are in dispute. The Mayor of Smithsburg fired Chief Bowers, after obtaining the informal approval of the Town Council at a closed executive session on or about August 5, 1997, but without prior notice or a hearing.[1] In keeping with

---

1. Plaintiff's Proposed Stipulation of Operative Facts Relevant to Determination of Liability Issues (Docket No 6.) states in paragraph 2 that "on or about August 5, 1997, the Mayor and

Rule 12(b), the Court shall treat the Motion to Dismiss as one for summary judgment pursuant to Rule 56.[2]

## II. Discussion

### A. Procedural Due Process Claims Generally

To establish a property interest in his job protected by the Fourteenth Amendment Due Process Clause, Chief Bowers must demonstrate a "legitimate claim of entitlement" to employment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). This "legitimate claim of entitlement" must stem from some independent source, such as state law. *Id.*

Maryland state law establishes as a general rule that state and local government employees are employed at will and have no property interest in their employment. *See, e.g., Leese v. Baltimore County*, 64 Md.App. 442, 497 A.2d 159, 167 (1985); *Elliott v. Kupferman*, 58 Md.App. 510, 473 A.2d 960, 966 (1984). This general rule applies to police officers as well, so that absent some property interest created by statute, ordinance, or contract, "a police officer does not have a federally protected right to continued employment as a police officer." *See Elliott*, 473 A.2d at 966.[3]

### B. Bowers's Claim Under Section 2(b)(25)

Bowers contends that the Annotated Code of Maryland Article 23A, Section 2(b)(25) (1996) ("Section 2(b)(25)"), provides him with the necessary property interest. Article 23A, Section 2 describes the powers that a Maryland municipal legislative body (the "city council" or "town council") may exercise by passing ordinances. Section 2(a) grants general authority to city councils to pass ordinances "as they may deem necessary in order to assure the good government of the municipality." Md.Ann.Code art. 23A, § 2(a) (1996). Section 2(b) enumerates thirty-seven specific powers in areas of local interest, such as the establishment of a police force, *see* Section 2(b)(22), a fire department, *see* Section 2(b)(12), and a municipal band, *see* Section 2(b)(4).

Section 2(b)(25) specifically authorizes a city council to remove municipal officers. It reads in relevant part:

(b) *Express powers.* In addition to, but not in substitution of, the powers which have been, or may hereafter be, granted to it, such legislative body also shall have the following express ordinance-making powers:

. . . .

(25) To remove or temporarily suspend from office any person who has been appointed to any municipal office and who after due notice and hearing is adjudged to have been guilty of inefficiency, malfeasance, misfeasance, non-feasance, misconduct in office, or insubordination; and to fill the vacancy caused by such removal or suspension.

Md.Ann.Code art. 23A, § 2(b)(25) (1996). Section 2(b)(25) provides a city council with the authority to pass an ordinance removing an appointed official from office; but it also expressly limits that authority by requiring the city council to provide prior notice and a hearing.

Town Council of the Town of Smithsburg, Maryland, meeting in closed, executive session, resolved to terminate the Plaintiff Thomas J. Bowers from his position as chief of police." (Docket No. 6 at ¶ 2.)

At the hearing, the City Attorney for the Town of Smithsburg explained that the Town Council had approved the Mayor's intention to fire Chief Bowers at the executive session without passing a formal resolution or ordinance. Plaintiff's counsel accepted this clarification of the Mayor and Town Council's actions.

2. "If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56." Fed.R.Civ.P. 12(b) (1997).

3. *See also Kerr v. Keetley*, 39 F.3d 1177 (4th Cir. 1994) (per curiam). In *Kerr*, the Fourth Circuit affirmed the decision of Judge Nickerson of this Court, holding that the police chief of Port Deposit, Maryland, did not have a property interest in his job and served as an at-will employee "at the pleasure of the Mayor." *Kerr*, slip op. at 4–5.

Chief Bowers argues that Section 2(b)(25) created a property interest in his job and entitled him to notice and a hearing prior to removal from office. Chief Bowers's argument succeeds only if Section 2(b)(25) provides the exclusive means under Maryland law to remove an appointed municipal official from office. An analysis of this issue requires an understanding of the interrelationship of Article 23A and Maryland municipal charters.

### C. Powers of the Municipality by Charter

The Maryland Constitution provides for "home rule" by permitting municipal governments to incorporate. *See* Md.Code Ann., Const. art. XI–E, §§ 1–6 (1981). The enabling legislation for home rule is found in Article 23A of the Annotated Code of Maryland; Article 23A authorizes a municipality to adopt a charter. *See* Md.Ann.Code art. 23A, §§ 11–18, 20–30, 41–43 (1996). While the charter is the basic document defining the powers of the local government, it is subordinate to the state Constitution and other state laws. For example, Article XI–E, Section 6 of the Maryland Constitution expressly provides that laws of the Maryland General Assembly control municipal charters. Md.Code Ann., Const. art. XI–E, § 6 (1981).

### D. Powers of the Mayor of Smithsburg

The Town of Smithsburg has adopted a version of the standard Maryland model charter.[4] The Smithsburg Charter establishes a Mayor as an elected municipal officer and lists the Mayor's duties.[5] Smithsburg, Md., Charter §§ 31–16 to 31–19 (1957), *reprinted in* Pub. Local L.Wash. County (1970 & Supp.1979) at 134–6 to 134–7 (Hearing Exh. A; Mot. Dismiss Exh.) ("Charter"). Among other powers, the Charter provides that "[t]he mayor, with the approval of the council, shall appoint the heads of all offices, departments, and agencies of the town government as established by this charter or by ordinance. *All office, department, and agency heads shall serve at the pleasure of the mayor."* Charter § 31–19(b) (emphasis added).

Smithsburg's Charter, therefore, delegates to the Mayor the authority to appoint municipal officers, with the approval of the Town Council. It also delegates to the Mayor the authority to remove these appointed municipal officers. The provision that "[a]ll office, department, and agency heads shall serve at the pleasure of the mayor" makes this removal power explicit. It is this power to remove that the Mayor of Smithsburg used in this case, firing Chief Bowers after obtaining the informal approval of the Town Council in closed executive session.

Nevertheless, the Charter cannot convey to the Mayor a power that conflicts with a controlling state law. If the Maryland General Assembly meant for Article 23A, Section 2(b)(25) to provide the exclusive means of removing appointed municipal officials, then it would be improper for the Mayor to remove Chief Bowers. Instead, only the Town Council could remove the Chief, by passing an ordinance and complying with the notice and hearing requirements of Section 2(b)(25). There is no language, however, in any Maryland statute or reported case that suggests that Section 2(b)(25) is exclusive.

### E. Section 2(b)(25) Does Not Supplant the Mayor's Power

#### 1. Section 2(b)(25) Functions as an Impeachment Power

Section 2(b)(25) provides a city council with a check upon the administrative powers that the charter delegates to the mayor. In many respects, the framework of government that

---

4. In 1955, the Maryland General Assembly published a model charter as Article 23B. The General Assembly repealed Article 23B in 1994. *See* Md.Ann.Code art. 23B, editor's note (1996). Although Article 23B never had the force of law, it served as a basic blueprint that many municipalities throughout the state, including Smithsburg, have since followed in enacting their own charters.

5. Among other things, a municipal charter may delegate powers, authority, and duties to elected municipal officers. *See* Md.Ann.Code art. 23A, § 29(c) (1996) ("Each [elected municipal] officer ... shall be taken and accepted in all respects as the elected officer of the municipal corporation in his respective position, *with the powers, authority and duties as set forth and prescribed in the charter.")* (emphasis added).

the municipal charter establishes parallels similar frameworks at the state and federal levels. A mayor's authority to appoint municipal officers with the approval of the city council, for example, parallels the President's authority to nominate, "by and with the Advice and Consent of the Senate ... public Ministers and Consuls ... and all other Officers of the United States." *See* U.S. Const. art. II, § 2. This scheme vests the primary responsibility for appointment of executive officers with the chief executive, subject to the consent of the legislature.

Article 23A provides a city council with two potential checks on this authority of the executive. First, Section 2(b)(19) permits a city council to pass an ordinance establishing a merit system for non-elected and non-appointed municipal employees, so that a mayor cannot remove these employees except for cause.[6]

Second, Section 2(b)(25) permits a city council to pass an ordinance (and to override the Mayor's veto with a super-majority, if necessary)[7] removing an appointed municipal official from office and naming a successor. This power parallels the power of the United States Congress to impeach and remove. *See* U.S. Const. art. I, §§ 2 & 3. Like the impeachment powers, the city council's ordinance-making removal power requires notice, hearing, and all the trappings and formalities attending the enactment of a public law.

### 2. No Indication that Section 2(b)(25) Supplants

■ There is no indication that the Maryland General Assembly intended Section 2(b)(25) to supplant the power of a mayor to remove appointed municipal officials from office. First, the history of Articles 23A and 23B suggests that the General Assembly could not have viewed Section 2(b)(25) as

providing the exclusive means to remove appointed municipal officials. In 1947, the Maryland General Assembly enacted the same language now found in Article 23A, Section 2(b)(25), providing city councils with the ordinance-making power to remove. *See* Md. Ann.Code art. 23A, § 2(26) (Flack 1951) (currently relocated at Section 2(b)(25)). In 1955, the General Assembly published the Article 23B model charter, upon which Smithsburg based its own charter, providing for a mayor's removal power. *See* Md.Ann. Code art. 23B, § 21(b) (Supp.1955) (repealed 1994) (providing model charter provision that appointed municipal officials serve "at the pleasure of the Mayor"). The General Assembly would not have created a model charter that provided a mayor with the power to remove had it intended for Section 2(b)(25) to provide the exclusive means to remove.

Second, nothing in the text of Section 2(b)(25) itself suggests that the Section supplants the mayor's routine power to remove. Although it is true that a city council has the ultimate authority to override a mayor's prerogative to retain an official, this result only comes about if the city council chooses to act by the extraordinary means of passing an ordinance. The text of Section 2(b)(25) does not suggest that a municipality must undertake all such routine removals in such an extraordinary manner.

Third, the case most closely reaching this issue, *Inlet Associates v. Assateague House Condominium Association,* 313 Md. 413, 545 A.2d 1296 (1988), supports the view that Section 2(b)(25) does not supplant a mayor's power. In *Inlet Associates,* the Maryland Court of Appeals differentiated between routine administrative acts and legislative acts; only the latter require the passage of an ordinance. *See Inlet Assocs. v. Assateague*

---

**6.** Section 2(b)(19) provides that the municipal legislative body will have the ordinance-making power "[t]o establish a merit system in connection with the appointment of all municipal officials and employees not elected or appointed ... and to request and avail themselves of the facilities of the Department of Budget and Management ... for the administration of such merit system without unnecessary expense." Md.Ann. Code art. 23A, § 2(b)(19) (1996).

**7.** *See* Charter § 31–19(d) (establishing the veto power of the Mayor); *Inlet Assocs. v. Assateague House Condominium Assoc.,* 313 Md. 413, 545 A.2d 1296, 1303–04 (1988) ("Of course, a common distinction between a resolution and an ordinance is that only the latter need by signed by the Mayor or passed over his veto.").

*House Condominium Assoc.*, 313 Md. 413, 545 A.2d 1296, 1303–05 (1988).[8]

The appointment and removal of an appointed municipal official is an administrative function. By contrast, a permanent rule of conduct or government, such as a change in a municipality's name, *see* Article 23A, Section 2(b)(8), or the establishment of a merit system for certain municipal employees, *see* Article 23A, Section 2(b)(19), is legislative. Because a municipality need not accomplish the removal of an appointed municipal official by passing an ordinance, Section 2(b)(25) does not supplant the power that a charter grants to a mayor to accomplish this result.

It is, therefore, true that if the Smithsburg Town Council wished to remove Chief Bowers without the cooperation of the Mayor, it would need to pass the appropriate ordinance (presumably over the Mayor's veto), after providing due notice and a hearing. Nevertheless, the Town Charter and Article 23A authorize the Mayor to remove the Chief without such an ordinance.

In this case, the Smithsburg Town Council did not pass an ordinance to remove Chief Bowers. Rather, the Town Council approved the Mayor's intention to fire Chief Bowers and the Mayor exercised the authority to remove him. This action was in keeping with the powers that the Charter and Article 23A delegates to the Mayor, and did not require the Town Council or the Mayor to resort to the ordinance-making power of Section 2(b)(25).

## III. Conclusion

 Because Chief Bowers served at the pleasure of the Mayor who removed him, Bowers was not Constitutionally entitled to notice and a hearing. Chief Bowers's claim that Section 2(b)(25) affords him a property interest protected by the Fourteenth Amendment Due Process Clause must, therefore, fail. Accordingly, the Court will GRANT summary judgment for the Town of Smithsburg.

---

**8.** In *Inlet Associates*, the City Council of Ocean City, Maryland had passed a resolution intending to convey to a private interest the city's rights in a public street. Article 23A, Section 2(b)(24) provides a city council with the authority to pass an ordinance conveying municipal property, but only after the city council "determines that the same is no longer needed for any public use." Md.Ann.Code art. 23A, § 2(b)(24) (1996). The City Council had not passed an ordinance and had not made the necessary finding.

The Court of Appeals did not find that the mere existence of an ordinance-making power in Article 23A, Section 2(b) supplanted all other powers of a municipality to accomplish the same objective. Indeed, it noted that Article 23A did not contemplate "the enactment of ordinances in every instance." *Inlet Assocs.*, 545 A.2d at 1304. Rather, the Court stated, a municipality must act through exercise of Section 2(b) ordinance-making powers only "if a municipal action is one of general application prescribing a new plan or policy." *Id.*

The Court explained that "[a]n ordinance is distinctly a legislative act; it prescribes 'some permanent rule of conduct or government, to continue in force until the ordinance is repealed.'" *Id.* at 1303 (quoting's Eugene McQuillen, Municipal Corporations § 15.02 (3d ed.1981)). When a municipality acts in such a permanent manner, the action "is considered legislative and therefore must be accomplished by ordinance." *Id.* By contrast, a municipality could exercise "all administrative or ministerial powers" through means other than its ordinance-making powers; for example, through the power to pass resolutions that Article 23A, Section 1 provides. *Id.* at 1303. Because the disputed conveyance by the Ocean City Council in that case "involved more on the part of the Council than the mere ministerial or administrative execution of an existing law," however, the Court of Appeals determined that the action required exercise of an ordinance-making power, and therefore Article 23A, Section 2(b)(24) controlled. *Id.* 545 A.2d at 1305.

In this case, the power that the Smithsburg Charter invests in the Mayor to remove appointed municipal officials is not "a municipal action [that is] of general application prescribing a new plan or policy," or "some permanent rule of conduct or government, to continue in force until [it] is repealed." Rather, the Charter has conveyed to the Mayor a power that a municipal officer may exercise pursuant to Article 23A, Section 29(c), a "ministerial or administrative execution of an existing law." The exercise of this power is not the type of permanent, legislative action that would require the passage of an ordinance. It is therefore unnecessary to resort solely to an ordinance-making power, and so the ordinance-making power of Article 23A, Section 2(b)(25) does not control.