UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THOMAS J. BOWERS,
Plaintiff-Appellant,

v.                                                                      No. 98-1038

TOWN OF SMITHSBURG, MARYLAND,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-97-3304-L)

Argued: October 29, 1998

Decided: February 5, 1999

Before WIDENER and MURNAGHAN, Circuit Judges, and
WILSON, Chief United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Paul Benedict Weiss, MARTIN & SEIBERT, L.C., Mar-
tinsburg, West Virginia, for Appellant. Daniel Karp, ALLEN, JOHN-
SON, ALEXANDER & KARP, Baltimore, Maryland, for Appellee.
**ON BRIEF:** Lewis C. Metzner, Hagerstown, Maryland, for Appel-
lant. Denise Ramsburg Stanley, ALLEN, JOHNSON, ALEXANDER
& KARP, Baltimore, Maryland; Edward L. Kuczynski, KUCZYNSKI
& KUCZYNSKI, P. A., Hagerstown, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In August of 1997, the Mayor of the Town of Smithsburg, Maryland, fired Thomas Bowers from his position as Chief of Police. Bowers sued for reinstatement and damages under 42 U.S.C. § 1983 (1994), claiming that the Town deprived him of a property interest in public employment in violation of the Due Process Clause of the Fourteenth Amendment. He claimed that he had a property interest because of article 23A, section 2(b)(25) of the Maryland Code, which grants municipal legislative bodies the power to remove appointed officials for cause after notice and a hearing. See Md. Ann. Code art. 23A, § 2(b)(25) (1996). Bowers argued that section 2(b)(25) establishes the exclusive method for removing appointed municipal officials. The District Court granted the Town's motion for summary judgment. See Bowers v. Town of Smithsburg, 990 F. Supp. 396 (D. Md. 1997). It found that the Town police chief is an at-will employee whom the Mayor is empowered to remove without cause and without a hearing, and that section 2(b)(25) simply details when and how a municipal legislative body is empowered to remove an appointed municipal employee. See id. at 401. We agree and affirm.

I.

On September 7, 1997, the Town of Smithsburg hired Bowers as a Chief of Police. The Town's charter provided that the "mayor, with the approval of the council, shall appoint the heads of all offices, departments, and agencies...." See Smithsburg, Md., Charter § 31-19(b) (1957), reprinted in Pub. Local L. Wash. County (1970 & Supp. 1979) at 134-6. Although it limited the Mayor's ability to hire department heads, the Town's charter granted the Mayor the power to fire appointed officials without cause. See id. ("All office, department, and agency heads shall serve at the pleasure of the mayor."). In August of 1997, the Mayor, Mildred Myers, exercised this power and

2

fired Bowers.**1** The Mayor did not give Bowers prior notice or a hearing. Shortly after his dismissal, Bowers filed this § 1983 action, claiming that the Town violated his due process rights.

The District Court granted summary judgment for the Town because it concluded that article 23A, section 2(b)(25) of the Maryland Code is not the exclusive means of removing an appointed municipal official. See Bowers, 990 F. Supp. at 400. It found "no indication" that section 2(b)(25) "supplant[s] the power of the mayor to remove appointed municipal officials from office." Id. at 400. The District Court observed that section 2(b)(25) merely "provides a city council with a check upon the administrative powers that the charter delegates to the mayor." Id. at 399. The Court analogized section 2(b)(25) to the power of the United States Congress to impeach and remove. See id. at 400 (citing U.S. Const. art. I, §§ 2 & 3). Consequently, the District Court held that Bowers did not have a property interest protected by the Due Process Clause of the Fourteenth Amendment.

II.

As the District Court recognized, Bowers does not have a claim under the Due Process Clause unless he had a property right. "The Fourteenth Amendment does not itself create property rights but rather affords a protection to them. Property rights are determined from sources independent of the Constitution, such as ... state law." Linton v. Frederick County Bd. of County Comm'rs, 964 F.2d 1436, 1438 (4th Cir. 1992); see Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Thus, we first examine Maryland law.

Under Maryland law, absent some special tenure provision, a local

_____

**1** Bowers was notified of his dismissal by letter. He received a letter dated August 13, 1997, signed by the Mayor and all five members of the Town's council. The letter stated that the Mayor and the council met in executive session on August 5, 1997, and decided "[b]y unanimous decision" to fire Bowers from his position. The District Court found that the Mayor had exercised her power to fire Bowers. Although the council concurred in the Mayor's judgment, it did not exercise any independent power to remove Bowers.

3

government employee, including a police officer, serves "at will" and, therefore, does not have a property right in continued public employment. See Elliott v. Kupferman, 473 A.2d 960, 966 (Md. Ct. Spec. App. 1984) ("Absent some special tenure provision, a police officer does not have a federally protected right to continued employment as a police officer."). If the Town had granted merit protection to the position of chief of police or if Bowers had an employment contract that altered his "at will" status, he would have had a protected property interest. Bowers, however, cannot claim either and concedes that under the Town's charter, which was validly adopted, appointed officials serve at the Mayor's pleasure. See Charter § 31-19(b). It would seem to follow that Bowers had no protected property interest in his job.

Bowers, nevertheless, claims that he had a protected property interest because of article 23A, section 2(b)(25), which states:

> [i]n addition to, but not in substitution of, the powers which have been granted ... [a municipal] legislative body shall also have the following express ordinance-making powers: ... (25) To remove or temporarily suspend from office any person who has been appointed to any municipal office and who after due notice and hearing is adjudged to have been guilty of inefficiency, malfeasance, misfeasance, nonfeasance, misconduct in office, or insubordination....

Bowers argues that section 2(b)(25) provides the exclusive means by which municipalities can remove appointed officials. According to Bowers, when the Maryland General Assembly passed section 2(b)(25), it implicitly rescinded, despite the express provisions of the Town's lawfully adopted Charter, the mayor's authority to fire appointed officials. According to Bowers, only the legislative body of a municipality can fire an appointed official and then only for cause after notice and a hearing.

Bowers contends that this result is dictated by the canon of statutory construction that "[a] statute that directs a thing to be done in a particular manner ordinarily implies that it shall not be done otherwise." Roselle Park Trust Co. v. Ward Baking Corp., 9 A.2d 228, 231

4

(Md. 1939).**2** Bowers misapplies the rules of statutory construction. Indeed, as the Court of Appeals of Maryland has recognized

> the maxim "expressio unius est exclusio alterius" ... is not a rule of law, but merely an auxiliary rule of statutory construction applied to assist in determining the intention of the Legislature where such intention is not manifest from the language used. It should be used with caution, and should never be applied to override the manifest intention of the Legislature....

Hylton v. Mayor & City Council of Baltimore, 300 A.2d 656, 664 (Md. 1972) (quoting Kirkwood v. Provident Sav. Bank, 106 A.2d 103, 107 (Md. 1954)); see INS v. Federal Labor Relations Auth., 4 F.3d 268, 272 (4th Cir. 1993) (refusing to apply expressio unius est exclusio alterius when the statute was not an effort "at legislative micromanagement"); Director, Office of Workers' Compensation Programs v. Bethlehem Mines Corp., 669 F.2d 187, 197 (4th Cir. 1982) ("The maxim [expressio unius est exclusio alterius ] is to be applied with great caution and is recognized as unreliable."). Nevertheless, Bowers argues that the absence of any express reference in the Maryland Code or Constitution to a municipal executive's power to fire appointed officials requires this court to conclude that municipalities can only fire appointed officials in accordance with section 2(b)(25).

Bowers correctly notes that Maryland municipalities have limited powers. See City of New Carrollton v. Belsinger Signs, Inc., 292 A.2d 648, 652 (Md. 1972). Maryland courts, however, have held consistently that municipalities have powers that are not expressly granted by the Maryland Code or Constitution. See Hardy v. Housing Management Co., 444 A.2d 457, 458 (Md. 1982); Birge v. Town of Eaton, 337 A.2d 435, 440 (Md. 1975); Bowie Inn, Inc. v. City of Bowie, 335 A.2d 679, 689 (Md. 1975); Belsinger Signs, 292 A.2d at 652; McRobie v. Mayor & Comm's of Westenport, 272 A.2d 655, 656 (Md. 1971); Montgomery County v. Maryland-Washington Metro. Dist., 96

_____

**2** This canon is referred to as expressio unius est exclusio alterius (the expression of one thing is the exclusion of another), see Black's Law Dictionary 581 (6th ed. 1990), or inclusio unius est exclusio alterius (the inclusion of one is the exclusion of another), see id. at 763.

5

A.2d 353, 358 (Md. 1953). Maryland municipalities have powers that are fairly implied from the powers expressly granted, and powers that are essential to the accomplishment of the objects of the municipality. See Harding, 444 A.2d at 458; Birge, 337 A.2d at 440; Bowie Inn, 335 A.2d at 689; Belsinger Signs, 292 A.2d at 652; McRobie, 272 A.2d at 656; Montgomery County, 96 A.2d at 358. The failure of the Maryland Code or Constitution to explicitly grant a power does not require a court to conclude that the power does not exist. See, e.g., Birge, 337 A.2d at 440 (finding that the General Assembly's grant of the power to operate an electric utility fairly implied the power to acquire property lying in another state).

The express powers that the General Assembly granted municipalities necessarily implies the power to hire and fire employees. For example, municipal legislatures are granted the right to establish a merit system for nonappointed and nonelected employees, see art. 23A, § 2(b)(19), to establish a retirement system, see id. § 2(b)(21), and to fix the salaries and compensation of all municipal officers and employees, see id. § 2(b)(26). In fact, the express powers granted by section 2(b) do not include the power to hire municipal employees, but it is beyond doubt that municipalities have that power.

Additionally, the Maryland General Assembly recognized that municipalities have an implied power to fire appointed officials without complying with section 2(b)(25). In 1955, the General Assembly passed a "Model Town Charter," upon which Smithsburg's Charter is based. See Md. Ann. Code art. 23B (Supp. 1955) (repealed 1994). This Model Town Charter gave the mayor the power to fire appointed officials. See id. § 21(b) ("All office, department, and agency heads shall serve at the pleasure of the mayor."). The Model Town Charter, being a mere example and lacking the force of law, did not independently create this power. See Inlet Assoc. v. Assateague House Condominium Assoc., 545 A.2d 1296, 1305 n.4 (Md. 1988). Indeed, the General Assembly recently repealed the Model Town Charter. See Md. Ann. Code art. 23B, ed.'s note (1996). Yet, the General Assembly adopted the Model Town Charter shortly after passing the language in section 2(b)(25),[3] and it was presumably aware of section

_____

[3] The language in article 23A, section 2(b)(25) was originally enacted in 1947. See Md. Ann. Code art. 23A, § 2(26) (Flack 1951). The Model Town Charter was promulgated in 1955. See Md. Ann. Code art. 23B, § 21(b) (Supp. 1955) (repealed 1994).

6

2(b)(25)'s supposed impact on a municipal executive's ability to fire appointed officials. See State v. Bicker, 581 A.2d 9, 12 (Md. 1990) ("It is presumed that the General Assembly acted with full knowledge of prior legislation and intended statutes that affect the same subject matter to blend into a consistent and harmonious body of law."). The General Assembly would not have promulgated a Model Town Charter that allowed a mayor to fire appointed officials if municipalities did not have the implied power to fire employees outside the confines of section 2(b)(25). This stark evidence of an implied power, combined with well-settled Maryland law recognizing that municipalities have powers not expressly granted, further exposes the weakness of Bowers's argument. The Model Town Charter and the express powers granted municipalities by article 23A, section 2 provide ample proof that the General Assembly did not intend for section 2(b)(25) to be the exclusive means by which a municipality can fire an appointed official.

III.

Neither Maryland employment law, the Town's charter, nor article 23A, section 2(b)(25) of the Maryland Code gave Bowers a federally-protected property right in continued employment. **4** Accordingly, the Mayor did not violate the Due Process Clause of the Fourteenth Amendment when she fired Bowers.

The decision of the District Court is

AFFIRMED.

_____
**4** Bowers did not request that this court certify a question to the Court of Appeals of Maryland. We believe that certification is not necessary in this case because Bowers clearly does not have a property right in continued public employment under Maryland law.

7