[Crim. No. 3899.   In Bank.—October 24, 1935.]

THE PEOPLE, Respondent, v. JOSEPH KRISTY et al., Appellants.

Melvin M. Belli for Appellants.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

CONREY, J.—Appellants Kristy and Mackay, together with one Fred Landers, were charged with offenses described in eleven counts of an indictment. Appellants, tried separately from their codefendant, were by the jury convicted on all counts. Kristy and Mackay appeal from the several judgments rendered against them and from the order denying their motion for a new trial. There was a fourth participant, one Rudolph Straight, acting with defendants in the transactions on which the charges were founded.

Defendants and Straight, on the 16th day of January, 1935, were under lawful commitment confined in the state prison at San Quentin, each for a term less than life. Count eleven of the indictment charged that the defendants, on said day, did wilfully, etc., escape from the prison. The other offenses, according to the evidence, were committed in connection with the accomplishment of the escape. These incidental offenses may be designated as burglary, robbery (four counts), grand theft of an automobile, and kidnaping for robbery (counts seven, eight, nine and ten).

In support of the appeal it is first contended that the evidence is insufficient to justify the conviction of appellants under the four counts charging them with commission of the crime of "kidnaping for the purpose of robbery". A brief description of the proceedings of the defendants in effecting their escape will help to define the question presented for solution.

Four guns were secretly brought into the prison and came into possession of the defendants. Thereafter, and shortly after noon of January 16, 1935, James B. Holohan, warden, was at luncheon in his dining room at the prison. With him were Warren H. Atherton, James H. Stephens and Frank H. Sykes, who were members of the board of prison terms and paroles, and Mark E. Noon, who was secretary of that board. At this time the three defendants and Straight, having by successful devices gained access to the warden's house, and armed with the said guns, appeared in the dining room. Within the next few minutes they robbed the three board members and the secretary by taking from them various amounts of money, jewelry and clothing. Secretary Noon was forced to give telephone orders pursuant to which the defendants obtained a Studebaker automobile, with chauffeur, and secured directions to the guards to refrain from firing when the car was driven away. The warden ran into the adjoining room, where he was severely "beaten up" by Straight. The defendants then compelled the three board members, and Noon, and the driver of the car, to ride with them in the car, and so escaped from the prison.

In the course of the pursuit which followed, covering a distance of several miles, both Stephens and Sykes were wounded by shots fired by the pursuing officers, and Straight was killed. The defendants were captured.

Section 209 of the Penal Code (Stats. 1933, p. 2617) reads as follows: "Every person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or robbery or to exact from relatives or friends of such person any money or valuable thing, or who aids or abets any such act, is guilty of a felony and upon conviction thereof shall suffer death or shall be punished by imprisonment in the state prison for life without

possibility of parole, at the discretion of the jury trying the same, in cases in which the person or persons subjected to such kidnaping suffers or suffer bodily harm or shall be punished by imprisonment in the state prison for life with possibility of parole in cases where such person or persons do not suffer bodily harm.''

■ The question is presented: Did the defendants kidnap or carry away the several persons (Atherton, Stephens, Sykes, Noon) ''to commit robbery''?

Primarily, the main purpose was to escape from prison. This crime they committed, with short-lived success. In order to commit the crime of escape and retain their liberty, they found it necessary to obtain a supply of ordinary civilian clothing, and a supply of funds. For this purpose they attempted to rob four persons of their clothes and money. And finally, for the combined purposes of escape and robbery, they found it expedient to seize these same victims and carry them along in the path of escape.

Upon the contention of appellants that the evidence was insufficient to justify their conviction under counts seven, eight, nine, and ten, to wit: ''kidnaping for the purpose of robbery'', they insist that according to the evidence the prison officials were kidnaped as hostages solely for the express purpose of escape, subsequent to a previous robbery of these same persons; that, therefore, this was not a kidnaping with intent to hold or detain for the purpose of robbery. The answer to this contention is that during the period while defendants were taking with them the persons so seized by them, the acts constituting the crime of escape were not concluded, and the robbery was still incomplete. The fact repeatedly has been recognized that robbery is not confined to any fixed *locus* but is frequently spread over a considerable distance and varying periods of time. In *People* v. *Boss*, 210 Cal. 245, 250 [290 Pac. 881], where it was shown that murder had been committed in connection with a robbery, and it was contended that the robbery had been completed before the homicide was committed, this court said:

''It is a sound principle of law which inheres in common reason that where two or more persons engage in a conspiracy to commit robbery and an officer or citizen is murdered while in immediate pursuit of one of their number who is fleeing from the scene of the crime with the fruits thereof in his pos-

session, or in the possession of a coconspirator, the crime is not complete in the purview of the law, inasmuch as said conspirators have not won their way even momentarily to a place of temporary safety and the possession of the plunder is nothing more than a scrambling possession. In such a case the continuation of the use of arms which was necessary to aid the felon in reducing the property to possession is necessary to protect him in its possession and in making good his escape. Robbery, unlike burglary, is not confined to a fixed *locus,* but is frequently spread over considerable distance and varying periods of time. The escape of the robbers with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property. Without revolvers to terrify, or, if occasion requires, to kill any person who attempts to apprehend them at the time of or immediately upon gaining possession of said property, their plan would be childlike. The defense of felonious possession which is challenged immediately upon the forcible taking is a part of the plan of robbery, or as the books express it, it is *res gestae* of the crime.'' We are forced to the conclusion that the evidence was sufficient to justify the conviction on each of said counts seven, eight, nine and ten.

The second principal ground of appeal as presented by counsel takes the form of a statement that the district attorney and his deputy were guilty of prejudicial misconduct which prevented a fair trial. The specifications on this point are clouded by general characterizations of the proceedings, which make it difficult to state precisely the acts to which appellants' contentions are directed. The quotations given from the address of the district attorney to the jury show that he made a zealous appeal for conviction; but the argument and appeal thus made are not shown to have been without relation to the evidence which had been produced. The claim of appellants that by virtue of such argument they were not tried only for the crimes for which they were indicted, is not supported by the record.

Finally, it is contended by appellants that the trial was held in their absence; that is to say, that stated proceedings of the trial occurred while they were absent from the courtroom. These proceedings, as shown by the record, were as follows: According to the clerk's transcript it appears that after the court had instructed the jury and some time

after the jury had retired for deliberation upon their verdict "the jury returned into court for further instructions, thereafter they returned to the jury room". According to the reporter's transcript, referring to this same incident, "the jury was returned into court and the following proceedings were had and taken". Omitting matters not pertinent to the point now to be considered, these further proceedings were as follows: The Court: Counsel will note the presence of all the jurors in the box? Ladies and Gentlemen of the Jury, do you desire something from the Court?" The foreman of the jury then stated a question relating to the instructions and the court made its reply, which consisted merely of re-reading certain instructions theretofore given. Counsel for defendants then asked the court to reread some of the other instructions and the court read something further, which presumably was responsive to counsel's suggestion. The jury then retired for further deliberation.

It thus appears that the record of the proceedings does not contain the slightest suggestion that the defendants were absent from the trial or from any part thereof. The only excuse for the contention made by them is founded upon excerpts from the reporter's transcript relating to the proceedings on presentation of defendants' motion for a new trial. The record of those proceedings, so far as it relates to this question, is as follows:

"Mr. Belli: . . . The first point that has been filed in my memorandum here that the trial has been held in the absence of the defendants goes to the instructing of the jury while the defendants were in the anteroom and not in the courtroom. I believe there were some instructions, as shown in the record, given to the jury in the absence of the defendants, and it is my impression—I guess I haven't the case here to cite to your Honor this morning—it is my impression that the entire trial should be held in the presence of the defendants. Then the second point— The Court: Well, you were present, were you not? Mr. Belli: Yes. The Court: You did not either cite it as misconduct, as is very frequently done, or make an objection to it. Mr. Belli: I am making this for the purpose of the record now, more or less."

In the argument of counsel for appellants in his brief it is asserted that at the time of the proceedings both defendants were in an anteroom. His statement on the subject is as

follows: "Appellants' case was greatly prejudiced while they were being detained by the guards, handcuffed in the ante-room out of sight of the jury in another room and out of sound of the proceedings entirely." There is nothing whatever in the record to justify the statement that defendants were out of sight of the jury or beyond hearing of the proceedings even if, as now claimed, they were not actually within the courtroom. It affirmatively appears that in these proceedings appellants were adequately represented by counsel. They should not be permitted now to raise the objection, based upon their absence from the courtroom, without presenting a record sufficient to prove that fact. (*People* v. *Douglass,* 100 Cal. 1 [34 Pac. 490]; *People* v. *Bealoba,* 17 Cal. 389, 399; *People* v. *Holmes,* 118 Cal. 444, 449 [50 Pac. 675].)

In this opinion we have discussed the questions arising upon the principal assignments of error on which appellants rely. The very slight emphasis which they have placed upon their few criticisms relating to refused instructions which they asked the court to give to the jury indicates that no reversible error was committed in the matter of instructions in the case, and this is confirmed by reference to the instructions themselves. We are satisfied that the defendants received the benefit of a fair trial, conducted according to law.

The judgments are and each of them is affirmed, and the order denying motion for a new trial is affirmed.

Langdon, J., Curtis, J., Waste, C. J., Thompson, J., Seawell, J., and Shenk, J., concurred.

Rehearing denied.