[Crim. No. 5264.   Second Dist., Div. One.   Mar. 29, 1955.]

## THE PEOPLE, Respondent, v. DONALD RICHARD RANDAZZO, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

DORAN, J.—Defendant was charged by information with robbery in Count I and in Count II with kidnapping for the purpose of robbery.  The jury found defendant guilty on both counts and on the second count recommended life imprisonment without possibility of parole.  A motion for a new trial was denied and the appeal is from the judgment and order denying motion for a new trial.

It·is contended on appeal that,

## "I

"The court erred in receiving the verdicts of the jury in the absence of counsel for the defendant. The receipt of a verdict for an eighteen year old boy in the absence of his counsel, in effect, denied the appellant due process of law guaranteed by the fourteenth amendment to the Constitution of the United States.

## "II

"The verdicts are contrary to the law and the evidence, particularly as to Count Two.

## "III

"The defendant was denied due process of law guaranteed by the fourteenth amendment to the Constitution of the United States in the receipt in admission of the alleged confessions including: (a) the written confession; (b) the tape recordings; (c) the motion picture reenactment.

## "IV

"The court erred in its rulings throughout the trial of the case.

## "(A)

"The court erred in refusing to compel the recall of Ed Hallmark, the alleged victim in the case, and in refusing to issue and order compulsory processes for that purpose.

## "(B)

"The court erred in refusing to permit the defense to read Hallmark's testimony at the preliminary hearing in view of the fact that he was not permitted to be recalled.

## "V

"The court erred in instructions given and refused.

## "(A)

"The evidence did not support an instruction, or instructions, on the law of kidnapping.

## "(B)

"The court erred in giving an instruction that kidnapping for the purpose of robbery may be found after the actual perpetration of a robbery.

## "VI

"The court erred in pronouncing judgment in view of the objections to the procedural denial of due process of law

under the fourteenth amendment to the Constitution of the United States. The court refused to permit the defendant to cross examine witnesses or to bring Ed Hallmark into court for further proceedings and further testimony.

"VII

"The court erred in pronouncing judgment on both offenses."

The record reveals, as recited in respondent's brief that,

"About 1:00 p. m. on Sunday, September 13, 1953 the appellant picked Joseph Perez up at his home. They went to El Monte and El Sereno, where they picked up three other boys and drove around drinking beer. They let the other three boys off about 10:30. The appellant then asked Perez if he wanted to help him rob a place, and Perez said that he did not want to. The appellant took Perez home and left him there about 11:30. Perez gave him seventy-five cents for taking him home. Then the appellant went away.

"About 2:00 o'clock Monday morning, September 14, 1953, the appellant drove into Ward's Acre Service Station in Alhambra in a Mercury car. Mr. Hallmark, the 73 year old service station attendant on duty, went to the appellant. Mr. Hallmark had a flashlight in his pocket. The appellant said that he wanted some gas and oil. Mr. Hallmark gave him the gas and went to give him the oil. The appellant hit Mr. Hallmark with something on the top and sides of his head. It sickened him and knocked him down. He started to call for help. The appellant got Mr. Hallmark up and pushed him toward the cash box, telling him that he would put a bullet through him if he didn't stop the noise. Mr. Hallmark opened the cash box and the appellant threw his arms around him. Then he hit Mr. Hallmark with something on top of his head. There was blood on his head. Then Mr. Hallmark got another blow and that was the last he remembered until he was in the hospital.

"About 4:30 that morning Joseph Perez's cousin woke him up and told him that the appellant was outside. Perez started to put on his clothes, and the appellant walked into the front room. He had on a blue shirt, which Perez had lent him, and gray trousers. They had blood on them. Perez asked what he was doing there so early, and the appellant said that he had robbed Ward's Acre and had brought the old man to Perez's house, where he had put him in the bathroom. Perez asked him why he did it, and the appellant

said he didn't know. He showed Perez a wallet full of money, which he said he had got from Ward's Acre. Perez told the appellant to take Mr. Hallmark back to Ward's Acre or to a hospital; that he didn't want to get involved in trouble. After Perez had argued with the appellant for about ten minutes, the appellant left, taking Mr. Hallmark with him. Mr. Hallmark had blood on the back of his head and he seemed to be in a daze."

Defendant was arrested on the night of September 22d. A complete confession followed the arrest which was recorded. Defendant was taken to the hospital where the victim stated, "Yes, that is the old man I slugged." Other evidence relating to defendant's guilt need not be detailed.

■ With regard to the first contention the record reveals that the minutes of the clerk show that,

". . . Counsel for defendant is not present during the return of the verdicts, said counsel having stated to the Clerk by telephone that is was agreeable with counsel that the verdicts be returned in his absence due to his being in the City of Los Angeles and not feeling too well at the time of the return."

No prejudicial error resulted from the incident. (See *People v. Bennett,* 65 Cal. 267 [3 P. 868]. Also *People v. Wissenfield,* 36 Cal.2d 758 [227 P.2d 833] ; also 53 American Jurisprudence, 708.)

■ Appellant argues, with regard to the second contention that, "The testimony in this case is that the gasoline station was robbed and not Ed Hallmark. There was nothing taken from his person and the robbery was completed when the money was taken from the cash box. There is nothing shown that his subsequent carrying away, or ride in the automobile, was to commit robbery or that any robbery was committed on him. The testimony of Mr. Hallmark ends with his being struck; he does not know what happened after that time. Whatever occurred comes from the lips of others, but there is no testimony that any robbery occurred thereafter.

"Under these circumstances, under Section 209, Penal Code, as amended in 1951, the defendant was not guilty of kidnapping to commit robbery.

.   .   .   .   .   .   .   .   .   .   .   .   .

"The examination of the evidence shows:

"(1) There was no kidnapping to commit robbery;

"(2) There was no bodily harm in the course of any transportation of Mr. Hallmark.

"It appears that he was transported to take care of him rather than do any bodily harm"

Section 209 of the Penal Code provides that "Every person who seizes, confines, . . . kidnaps or carries away any individual by any means whatsoever with intent to hold or detain or who holds or detains, such individual for ransom, reward or to commit extortion or robbery . . . is guilty of a felony. . . ."

There is no question as to the applicability of the law. The only question was one of fact and as pointed out by respondent,

"Where a kidnaping takes place after the actual perpetration of a robbery such kidnaping may be a kidnaping for the purpose of robbery if it may reasonably be inferred that the transportation of the victim was to effect the escape of the robber or to remove the victim to another place where he might less easily sound an alarm.

"*People* v. *Kristy*, 4 Cal.2d 504, 507-508 [50 P.2d 798].

"*People* v. *Raucho*, 8 Cal.App.2d 655, 665-666 [47 P.2d 1108].

"*People* v. *Bean*, 88 Cal.App.2d 34, 40-41 [198 P.2d 379]."

That the evidence supports the jury's conclusion that the kidnapping was related to and associated with the robbery, there can be no question.

It would serve no useful purpose to detail the arguments relating to appellant's other contentions. It is sufficient to note that no prejudicial errors were committed by the trial judge. The instructions were not erroneous; due process of law was not denied the defendant. Other contentions are without merit.

Judgment and order affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 11, 1955, and appellant's petition for a hearing by the Supreme Court was denied April 27, 1955.