# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| ADA MOTORS, INC., dba BURIEN TOYOTA, a Washington corporation, | ) ) ) | No. 76613-9-I consolidated with No. 76614-7-I |
| Respondent, | ) ) | |
| v. | ) ) ) | |
| DAVID L. BUTLER and ELIZABETH BUTLER, and THE ROBERT LARSON AUTOMOTIVE GROUP, INC., a a Washington corporation, dba LARSON TOYOTA, | ) ) ) ) ) ) | PUBLISHED OPINION FILED: December 31, 2018 |
| Appellants. | ) ) ) | |

COURT OF APPEALS DIV I STATE OF WASHINGTON FILED 2018 DEC 31 AM 8: 48

VERELLEN, J. — Before a trial court excludes witnesses for a party's failure to list them in a joint statement of evidence, the court must consider the factors identified in Burnet v. Spokane Ambulance.[1] Because the trial court excluded four witnesses without considering the Burnet factors and because the error was not harmless, this matter must be remanded for a new trial.

Although we need not address the additional issues raised on appeal, we take this opportunity to clarify that, as to damages, the plaintiff's initial burden of

---

[1] 131 Wn.2d 484, 933 P.2d 1036 (1997).

proof in an unjust enrichment claim under the Uniform Trade Secrets Act (UTSA)[2] is to establish sales attributable to the use of a trade secret. Then the burden shifts to the defendant to prove that any of those sales are not attributable to the use of a trade secret. And for the "willful and malicious" jury instructions, "willful" is adequately defined as "voluntary or intentional" and "malicious" is best defined to include "as a result of ill will or improper motive." Finally, if damages are recovered on remand and the jury determines the conduct was willful and malicious, resulting in an award of attorney fees, the trial court must expressly address any disproportionality between the amount of the fee award and the amount in issue.

## FACTS

Prior to February 2003, Butler sold shoes at Nordstrom and developed a list of his customers and contacts. In February 2003, Butler left Nordstrom and began selling cars at Burien Toyota. Burien Toyota connected Butler with a marketing firm to help him maintain his customer list.

In March 2011, Butler left Burien Toyota and began selling cars at Larson Toyota (Larson). Butler took a 2009 version of the customer list with him. Butler contacted the customers to announce he was working at Larson. On April 4, 2011, Burien Toyota sent a cease and desist letter to Butler and Larson, alleging the customer list was Burien Toyota's trade secret. Larson flagged the customers on the list as "dead clients" and ceased all efforts to contact them.

---

[2] Ch. 19.108 RCW.

On April 25, 2011, Burien Toyota sued Larson, alleging breach of contract, unjust enrichment, breach of the duty of loyalty, violation of the UTSA, and tortious interference with business relationships. The court dismissed all but the UTSA claim, which proceeded to trial. During discovery, Larson produced a list of its vehicle sales since Butler started working at Larson Toyota, regardless of the salesperson involved. Burien Toyota produced a list of 200 matches between its customer database and Larson's sales list. In the first trial, the jury found the customer list was Burien Toyota's trade secret and that Larson misappropriated it, but the jury found the misappropriation did not financially harm Burien Toyota. Burien Toyota appealed. This court remanded the case for a new trial on unjust enrichment damages due to a jury instruction error.[3]

On remand for the second trial, the trial court reopened discovery. Burien Toyota produced a list of 412 matches between its database and the updated Larson sales list. Burien Toyota claimed $4,305.66 in unjust enrichment damages per customer, totaling $1,773,934.96. Burien Toyota also claimed an equal amount of damages for future unjust enrichment. Larson presented evidence that of the 412 matches identified by Burien Toyota, only five individuals actually purchased cars at both dealerships. Larson attempted to call the five individuals to testify, but the court excluded four of them because Larson had not properly listed them as potential witnesses. At the end of the second trial, the jury found

---

[3] ADA Motors, Inc. v. Butler, No. 70047-2-I (Wash. Ct. App. Aug. 18, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/700472.pdf.

Larson was unjustly enriched and $12,496.12 of Larson's profits on sales were "attributable to the use of a trade secret."[4] The jury also found Larson's misappropriation of the customer list was willful and malicious.

Larson moved for a new trial under CR 59 based on the court's exclusion of the four witnesses. The court denied the motion. Because the jury found willful and malicious conduct by Larson, the court doubled the jury award and awarded attorney fees as allowed by the UTSA. Larson appeals.

## ANALYSIS

### Witness Exclusion

We review a trial court's denial of a motion for a new trial for abuse of discretion.[5] A trial court abuses its discretion if its decision is based on untenable grounds or untenable reasons.[6]

Larson moved for a new trial under CR 59(a)(1) and (8), which provide that a court may grant a new trial due to:

> (1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial.
>
> . . . .
>
> (8) Error in law occurring at the trial and objected to at the time by the party making the application.

---

[4] Clerk's Papers (CP) at 2384.

[5] Brundridge v. Flour Fed. Svcs., Inc., 164 Wn.2d 432, 454, 191 P.3d 879 (2008).

[6] Teter v. Deck, 174 Wn.2d 207, 215, 274 P.3d 336 (2012).

Larson argued the exclusion of the four witnesses he failed to identify in his joint statement was error. He submitted declarations from the witnesses indicating they would have testified that they bought cars from Larson for reasons unrelated to the misappropriation and that they were not contacted or solicited prior to purchasing cars. We conclude a new trial is warranted.

Prior to imposing a severe discovery sanction such as excluding witnesses, the court must explicitly consider the factors from Burnet of whether a lesser sanction would probably suffice, whether the violation at issue was willful or deliberate, and whether the violation substantially prejudiced the opponent's ability to prepare for trial.[7] A Burnet error is harmless where erroneously excluded evidence is irrelevant and/or "merely cumulative."[8]

Here, Burien Toyota acknowledges that the lack of Burnet findings "is reversible error as to the damages award."[9] To the extent Burien Toyota suggests the Burnet error is generally harmless, there is no showing that the testimony of the four witnesses will be irrelevant or cumulative to the testimony given at trial. Burien Toyota's argument that the Burnet error is specifically harmless as to the jury determination that the misappropriation was willful and malicious also fails. Burien Toyota argues that the four witnesses' testimony is irrelevant to whether

---

[7] Mayer v. Sto Industries, Inc., 156 Wn.2d 677, 688, 132 P.3d 115 (2006).

[8] Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013) (witnesses testified to "virtually every specific activity cited by the excluded witnesses"; the court held the erroneously excluded testimony "that was not irrelevant was instead cumulative and its exclusion was therefore harmless")

[9] Resp't's Br. at 22.

5

the misappropriation is willful and malicious, so there is no need for the jury to revisit that question on remand. But the testimony of the four excluded witnesses will address Larson's use of the misappropriated trade secret. Of course, Larson does not anticipate that their four proffered witnesses will be the source of any adverse evidence of malicious conduct, but we don't know the details of their testimony. The four witnesses may provide information material to whether the use of the trade secret was malicious.

Burien Toyota also argues that in the most recent trial, the only arguments it made about willful and malicious behavior related to how the trade secret was misappropriated, not how the trade secret was used. But Burien Toyota provides no authority that willful and malicious behavior, for purposes of trade secrets, encompasses only misappropriation and not how a trade secret was used. The question whether Larson's conduct was willful and malicious must be addressed by the jury on remand.

Therefore, we accept Burien Toyota's concession as to the damages verdict and conclude the court's failure to consider the Burnet factors was not harmless. We remand for a new trial concerning unjust enrichment damages and whether the misappropriation was willful and malicious.

We need not address additional issues raised on appeal, but we take this opportunity to provide some guidance for the third trial in this dispute.[10]

---

[10] See State v. Fricks, 91 Wn.2d 391, 392, 588 P.2d 1328 (1979) ("We find two of the errors to be prejudicial, each requiring a remand for a new trial. We reach the remaining issues for the guidance of the trial court on remand."); Taylor

Jury Instructions[11]

Larson argues jury instruction 7 misstated Burien Toyota's burden of proof. In the prior appeal, we concluded that, consistent with Petters v. Williamson & Associates, Inc.,[12] a proper damages instruction describing the plaintiff's burden in an unjust enrichment trade secret misappropriation case should not include the phrase "damages from sales." But the damages instruction given in the second trial also eliminated the phrase "attributable to the use of a trade secret." We clarify that the inclusion of the phrase "attributable to the use of a trade secret" is a more complete and precise statement of the law.

In Petters, this court adopted the Restatement (Third) of Unfair Competition approach to proving damages in cases involving misappropriation of a trade secret:

> The traditional form of restitutionary relief in an action for the appropriation of a trade secret is an accounting of the defendant's profits on sales attributable to the use of the trade secret. . . . The

---

v. Intuitive Surgical, Inc., 187 Wn.2d 743, 753, 389 P.3d 517 (2017) ("Although we need not reach Taylor's additional claims, we reach them to provide guidance for the trial court should these issues arise on retrial.").

[11] We review jury instructions de novo. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.2d 289 (2012). An instruction is erroneous if it is misleading, does not allow counsel to argue their theory of the case, or when read as a whole does not properly inform the trier of fact of the applicable law. Id. (quoting Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996)); Joyce v. Dep't of Corr., 155 Wn.2d 306, 323, 119 P.3d 825 (2005)). "An erroneous instruction is reversible error only if it prejudices a party. Prejudice is presumed if the instruction contains a clear misstatement of law; prejudice must be demonstrated if the instruction is merely misleading." Anfinson, 174 Wn.2d at 860.

[12] 151 Wn. App. 154, 210 P.3d 1048 (2009).

plaintiff has the burden of establishing the defendant's sales; the defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits.[13]

This approach "requires the defendant to explain why any particular portion of the money that it received as a result of the misappropriating transaction should *not* be considered an 'actual loss' suffered by the plaintiff."[14] The <u>Petters</u> court also acknowledged "it is the burden of the party seeking relief under the Uniform Trade Secrets Act to demonstrate that such a secret has actually been misappropriated in order to have a right to any damage award."[15]

Before the second trial, Larson proposed the following instruction:

> On the claim of misappropriated trade secrets, Burien Toyota has the burden of proving each of the following propositions:

> That, as a result of the misappropriation of Burien's customer information, Mr. Butler and/or Larson Toyota received money or benefits that in justice belong to Burien Toyota. *The burden is on Burien Toyota to prove sales attributable to the use of a trade secret.* If Burien Toyota proves sales attributable to the use of a trade secret, the burden shifts to Mr. Butler and/or Larson Toyota to establish any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits.[16]

The court declined to give this proposed instruction and opted instead to give jury instruction 7:

---

[13] <u>Id.</u> at 165 (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45 cmt. f., at 516-17 (1995)).

[14] <u>Id.</u>

[15] <u>Id.</u> at 164.

[16] CP at 1600 (emphasis added).

Burien Toyota claims that as a result of the misappropriation of the trade secret, Mr. Butler and/or Larson Toyota have been unjustly enriched. On the claim of unjust enrichment resulting from the misappropriated trade secret, Burien Toyota has the burden of proving the following proposition:

That, as a result of the misappropriation of the trade secret, Mr. Butler and/or Larson Toyota received money or benefits that in justice and fairness belong to Burien Toyota. *Plaintiff has the initial burden of proving defendants' sales.* The burden then shifts to Mr. Butler and/or Larson Toyota to establish any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits.

If you find from your consideration of all of the evidence that the proposition has been proved, then your verdict should be for Burien Toyota. On the other hand, if you find that the proposition has not been proved, your verdict should be for Mr. Butler and Larson Toyota.[17]

Without the phrase "sales attributable to the trade secret," jury instruction 7 can be read to allow the plaintiff to satisfy its burden with gross sales data, whether or not attributable to the trade secret. Although Burien Toyota argues the existing instructions adequately allowed Larson to argue its legal theories, the trial court should not give an instruction that contains the potential for confusion or uncertainty.

Therefore, on remand, the damages instruction should include the provision: "The plaintiff has the initial burden of proving sales attributable to the trade secret. Then the burden shifts to the defendant to establish any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits."

---

[17] CP at 2198 (emphasis added).

Larson also challenges jury instructions 8 and 9 defining "willful" and "malicious." Under the UTSA, if "wilful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party."[18] But the UTSA does not define "willful," "malicious," or "willful and malicious."[19] The sufficiency of jury instructions defining "willful and malicious" within the context of the UTSA is an issue of first impression before this court.

Jury instruction 8 defined "willful" as "voluntary or intentional, but not necessarily malicious."[20] Jury instruction 9 defined "malicious" as "without just cause or excuse."[21] Larson contends that, read together, these instructions allow a jury to find willful and malicious misappropriation without finding the "critical" element of maliciousness, "ill will or improper motive."[22] Larson makes no other objection to jury instruction 8 regarding the definition of "willful." In this setting, "willful" is adequately defined as "voluntary or intentional."

Regarding maliciousness under the UTSA, Larson proposed a detailed definition:

> "Malicious" is defined as being characterized by, or involving, malice; having, or done with, wicked, evil or mischievous intentions or

---

[18] RCW 19.108.040.

[19] See RCW 19.108.010.

[20] CP at 2199.

[21] CP at 2200.

[22] "Larson's proposed instructions defining 'willful' and 'malicious' . . . reflected the common meaning understanding of these terms and included the critical ill will or improper motive element 'malicious.'" Appellant's Br. at 37-38.

motives; wrongful and done intentionally without just cause or excuse or as a result of ill will.[23]

Burien Toyota's position is that Petters controls on the issue of defining "malicious" under the UTSA for the purposes of jury instructions. But Petters did not address the proper form of a jury instruction under the UTSA when it endorsed the phrase "without just cause or excuse" to define "malicious."[24]

In Boeing v. Sierracin Corp., our Supreme Court analyzed the sufficiency of evidence supporting the trial court's finding of willful and malicious misappropriation.[25] After a contractual relationship between Boeing and Sierracin fell through, Sierracin continued to use Boeing proprietary data to manufacture and sell airplane windows in the spare parts market. A Boeing official warned Sierracin that any such use outside manufacturing parts for sale by Boeing was misappropriation, but Sierracin continued to use various Boeing specifications and tried to obtain its own FAA-authorization using the data. The trial court's finding

---

[23] CP at 1602. As a threshold matter, Burien Toyota relies on Harris v. Burnett, 12 Wn. App. 833, 843, 532 P.2d 1165 (1975), and argues Butler inadequately objected to jury instruction 9 and waived this issue. Under Harris "When an instruction to be given by the trial court is a correct statement of the law but is objected to as too broad or as insufficiently specific under the evidence, the objecting party must propose a proper instruction on the subject. Reversible error is not present unless the preferable instruction has been submitted and has been refused." Harris, 12 Wn. App. at 843. Butler's proposed instruction containing the preferable language "as a result of ill will" is sufficient to meet the Harris burden.

[24] Petters, 151 Wn. App. at 173.

[25] 108 Wn.2d 38, 738 P.2d 665 (1987). The narrower issue presented in this appeal, the sufficiency of jury instructions regarding the meaning of "willful and malicious," was not at issue in Boeing.

that Sierracin willfully and maliciously misappropriated trade secrets was affirmed on appeal:

> The record indicates that Sierracin *knew its actions to be of dubious legality*, and engaged in a massive effort to disguise its copying of Boeing's drawings. *The trial court did not believe that Sierracin ever entertained any honest doubt as to the legality of its conduct, but took a calculated risk and lost.* . . . The trial court's decision that Sierracin's actions were willful and malicious is not erroneous and the award of punitive damages is affirmed.[26]

The <u>Petters</u> court, like the Supreme Court in <u>Boeing</u>, analyzed the sufficiency of evidence supporting the trial court's finding of willful and malicious misappropriation. Petters, a design engineer specializing in underwater engineering, worked with Williamson to design and market a unique deep sea drill. After a falling out regarding Peters' compensation, the contractual relationship between Petters and Williamson ended. Petters then alleged Williamson misappropriated trade secrets owned in part by Petters. The trial court's finding that Williamson willfully and maliciously misappropriated trade secrets was affirmed on appeal:

> Williamson advances the argument that, notwithstanding that it "willfully" licensed the BMS technology to NGK, it cannot be found to have acted "maliciously" because it did not actually intend to harm Petters by licensing the technology. Williamson protests that, indeed, because it always intended to pay Petters his royalty share of the transaction's proceeds, it only wanted to help Petters by licensing the technology.
>
> *This position both misstates the basis for the trial court's ruling and unjustifiably narrows the scope of that which may constitute "malicious" misappropriation.* The conduct that the trial court found to

---

[26] <u>Id.</u> at 62 (emphasis added).

12

be malicious was Williamson's refusal to provide Petters with any information regarding the BMS–II transaction, let alone obtain authorization to disclose the BMS technology. Black's Law Dictionary 977 (8th ed.2004) defines "malicious" as: "1. Substantially certain to cause injury. 2. Without just cause or excuse." The only excuse that Williamson had for its conduct was its unusual interpretation of the injunction. That interpretation was erroneous and, hence, did not provide just cause for Williamson's behavior. None of the foreign cases cited by Williamson cast serious doubt on this purely factual determination.[27]

This reasoning does not equate with using "without just cause or excuse" as the sole basis for a jury instruction defining "malicious" for purposes of the UTSA. Rather, it stands for the principle that the scope of what constitutes malicious misappropriation may not be unjustifiably narrowed.

Although there is significant variation in how other UTSA jurisdictions construe the same "malicious" provision, there is a legitimate concern that "without just cause or excuse" does not adequately convey the level of malice required.

For example, in Real-Time Laboratories, Inc. v. Predator Systems, Inc., the District Court of Appeal of Florida, Fourth District, declined to hold that a finding of "willful and malicious" requires only that trade secrets were taken with "knowing or reckless disregard."[28] Instead, the Florida court looked to two explanations of UTSA maliciousness found in other jurisdictions. First, the court used the rationale from a Seventh Circuit case that "willful and malicious" "'surely must include an intentional misrepresentation as well as a misappropriation resulting from the

---

[27] Petters, 151 Wn. App. at 172-73 (emphasis added).
[28] 757 So.2d 634, 637-38, 25 Fla. L. Weekly D1250 (2000).

13

*conscious disregard of the rights of another.'"*[29] Second, the court highlighted our Supreme Court's decision in Boeing with its emphasis on "dubious legality" and lack of "any honest doubt as to the legality of its conduct."[30]

In Bond v. Polycycle, Inc., the Court of Special Appeals of Maryland found that "actual malice was present" where the defendant exercised obvious "ill will" toward the plaintiff in his willful misappropriation.[31] The Maryland court used two definitions of "malicious." First, "'the intentional doing of a wrongful act without legal justification or excuse. . . . done knowingly and deliberately, for an improper motive and without legal justification.'"[32] Second, having a purpose "to deliberately cause harm or injure."[33] Several other jurisdictions have applied similar definitions of "malicious" under the UTSA.[34]

---

[29] Id. at 637 (emphasis added) (quoting Mangren Research & Dev. Corp. v. Nat'l Chem. Co., Inc., 87 F.3d 937, 946 (7th Cir. 1996)).

[30] Id. (quoting Boeing, 108 Wn.2d at 62).

[31] 127 Md. App. 365, 382, 732 A.2d 970 (1999).

[32] Id. (quoting Elliot v. Kupferman, 58 Md. App. 510, 526, 473 A.2d 960 (1984)).

[33] Id.

[34] See, e.g., Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714, 730 (7th Cir. 2003) ("[T]he phrase 'willful and malicious misappropriation' . . . includes 'an intentional misappropriation as well as a misappropriation resulting from the conscious disregard of the rights of another.'") (quoting Mangren Research, 87 F.3d at 946); Haught v. Louis Berkman, LLC, 417 F. Supp. 2d 777, 784 (N.D. West Virginia 2006) ("Malice is 'characterized by, or involving, malice; having, or done with, evil or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse or as a result of ill will.") (quoting State v. Burgess, 205 W. Va. 87, 516 S.E.2d 491, 493 (1999)); MicroStrategy, Inc. v. Business Objects, S.A., 331 F. Supp. 2d 396, 430 (E.D. Va. 2004) ("[M]alice requires a finding that the action was taken with 'ill will, malevolence, grudge,

We conclude that, consistent with the Petters rationale, an intent to injure need not be shown to prove maliciousness under the UTSA. But "malicious" connotes a level of ill will or improper motive not captured by "without just cause or excuse." Therefore, the UTSA maliciousness instruction on remand would be more complete and meaningful if expressed to include "as a result of ill will or improper motive."

Attorney Fees

Larson raises numerous challenges to the amount and computation of attorney fees awarded. Because any award of attorney fees will be dependent on the outcome of the new trial on remand, we decline to address each of the arguments raised. But a key consideration is the proportionality of the award of fees to the amount in controversy.[35] A lodestar calculation that grossly exceeds the amount in controversy should suggest a downward adjustment, but a court "'will not overturn a large attorney fee award in civil litigation merely because the amount at stake in the case is small.'"[36] The court must give consideration to the billing judgment exercised, or not exercised, in view of the amount in controversy.[37] For purposes of proportionality analysis, the amount in controversy

---

spite, wicked intention or a conscious disregard of the rights of another.'") (quoting Peacock Buick, Inc. v. Durkin, 221 Va. 1133, 1137, 277 S.E.2d 225 (1981)).

[35] Berryman v. Metcalf, 177 Wn. App. 664, 660, 312 P.3d 745 (2013).

[36] Id. at 657 (quoting Mahler v. Szucs, 135 Wn.2d 398, 433, 957 P.2d 632 (1998)).

[37] Id. at 661 (quoting Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 156, 859 P.2d 1210 (1993)).

necessarily requires consideration of the actual amount recovered on a claim.[38] A court considering requested fees nearly 50 times as large as the amount recovered must necessarily address the billing judgment giving rise to the fee request.[39]

Fees on Appeal

Burien Toyota also seeks fees on appeal under RAP 18.1 and RCW 19.108.040. RAP 18.1(a) allows fees when "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before . . . the Court of Appeals." Under RCW 19.108.040, if "wilful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." Consistent with RAP 18.1(i), we defer to the trial court to include reasonable fees associated with this appeal as part of any award of trial court fees on remand.[40]

---

[38] See Travis v. Wash. Horse Breeders Ass'n, Inc., 111 Wn.2d 396, 409-10, 759 P.2d 418 (1988) (For fees under the Consumer Protection Act, ch. 19.86 RCW, "the amount in controversy is merely listed as a factor to be considered. The size of the attorney fees in relation to the *amount of the award* is not in itself decisive.") (emphasis added); Singleton v. Frost, 108 Wn.2d 723, 731, 742 P.2d 1224 (1987) (instructing trial court to "take into account the amount involved and to set the award of fees with the *total sum recovered in mind*") (emphasis added).

[39] The jury awarded $12,496.12 in damages. The court awarded $610,071.90 in attorney fees.

[40] See also Felipe v. Dep't of Labor & Indus., 195 Wn. App. 908, 920, 381 P.3d 205 (2016) ("When an appellate court remands a case for retrial, as we do here, that court cannot properly award fees because the prevailing party has not yet been determined. Thus, at this time a fee award is premature, but the trial court may award appellate attorney fees after retrial, if appropriate.").

## CONCLUSION

Because of a <u>Burnet</u> error, remand for a new trial is required to address the unjust enrichment damages on the misappropriation of trade secrets claim, together with a determination of whether the misappropriation was willful and malicious for purposes of the UTA.

Therefore, we reverse and remand for further proceedings consistent with this opinion.

WE CONCUR:

Mann, A.C.J.

Becker, J.